IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER ELEVEN |
| | : | |
| WIRELESS TELECOMMUNICATIONS, INC., et al., | : | BANKRUPTCY NO.: 5-02-bk-03994 |
| | : | |
| | : | {**Nature of Proceeding**: Motion #1320} |
| DEBTORS | : | |

# **OPINION**[1]

The Debtors were authorized to employ Hogan & Hartson LLP as Special FCC Counsel by Order of this Court dated December 29, 2003 (Doc. #228). On August 13, 2007, Hogan & Hartson LLP filed a First and Final Application requesting compensation and reimbursement of expenses (Doc. #819).[2] Thereafter, the Debtors filed a Motion pursuant to Federal Rule of Bankruptcy Procedure 9019 for an Order approving a Stipulation and Agreement addressing the Final Application of Hogan & Hartson LLP for its request for compensation and reimbursement of expenses (Doc. #1320).[3] In response to the limited notice on the underlying Motion, Vermont Telephone Company, Inc., (hereinafter "VTel"), filed a Limited Objection (Doc. #1333). The Court held a hearing

---

[1] Drafted with the assistance of Richard P. Rogers, Law Clerk.

[2] A review of the docket reflects that Hogan & Hartson's Final Fee Application was not noticed pursuant to Fed.R.Bankr.P. 2002(a)(6) or Local Bankruptcy Rule 2002-1(a), (b) for the U.S. Bankruptcy Court for the Middle District of PA.

[3] While paragraph 14 of the Motion reads that the Debtors advised Hogan & Hartson that they believed the Final Application was excessive, and the Debtors intended to object to the Final Application, no objection was filed on the docket. Furthermore, operating under a mistaken belief that the Fee Application had been noticed to all creditors when, in fact, it was not, the Court improvidently authorized limited notice of the Stipulation by Order dated December 29, 2009 (Doc. #1321).

on the Motion and Limited Objection on March 16, 2010 and at the conclusion of the hearing, took the matter under advisement.

The Final Fee Application requests compensation in the amount of $54,742.50 together with reimbursement of expenses in the amount of $592.57 for a total of $55,335.07.  The allegations of the Motion indicate that the Debtors believe the total request in the Fee Application is excessive.  Not surprisingly, Hogan & Hartson contend that the amounts requested are reasonable.  The Motion further alleges, at paragraph 16, that the parties intended to settle the dispute in order not have the expense, delay, and uncertainly associated with any litigation concerning the Fee Application.  In short, the parties stipulated that Hogan & Hartson should be allowed an administrative expense in the amount of $27,667.53.  The Motion provides that by applying the factors the Court must consider when requested to approve a compromise or settlement under Fed.R.Bankr.P. 9019, as set forth in the case of *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996), the Court should find that the Stipulation is reasonable and in the best interest of the estate.  Furthermore, the Debtors allege that the request for compensation and reimbursement of expenses satisfies, in all respects, the standards of the Code under Section 330 and the applicable standards for allowance of compensation and reimbursement of expenses as set forth in the case of *In Re Busy Beaver Building Centers, Inc.,* 19 F.3d 833 (3d Cir. 1994).

VTel's objection argues that the Debtors have provided no information as to why

they believe the Final Fee Application was excessive and why the settlement amount is a fair settlement in the best interests of the estate and its creditors.  Further, VTel questions why any compensation should be allowed to Hogan & Hartson when the Debtors may have viable claims against Hogan & Hartson arising from the work they were hired to perform on behalf of the estate.[4]  In short, VTel questions the rationality of the settlement.  VTel also indicates that, while deference should be given to the Debtors' business judgment decisions, the factors which the Debtors used to make a decision to settle the potential dispute on the Fee Application were not made public, and therefore, neither the creditors nor this Court can weigh the reasonableness of the settlement.

At the hearing, the Court heard argument from both the Debtors and VTel.  The only witness was Neil Gilmour, President and Chief Restructuring Officer and Plan Administrator of the Debtor.  No one from the applicant, Hogan & Hartson, participated in the hearing.  Mr. Gilmour's testimony parroted the position advanced by the Debtors in the Motion to approve the Stipulation concerning both the reasons why the Court should approve the Stipulation using the *Martin* factors and why a fifty percent (50%) reduction in the request for fees and expenses under 11 U.S.C. § 330 and the *Busy Beaver* standards were appropriate.  After the closing of the record, I observed that every application presented to this Court had to be reviewed under the guidelines of *Busy Beaver* and that I

---

[4] Paragraph 2 of the Stipulation provides, *inter alia*, that "[t]his Stipulation shall not waive or release any claims held by the Debtors, if any, against Hogan or its members, employees, agents or affiliates."  See Stipulation and Agreement attached as Exhibit A to Motion #1320 at page 3.

really did not view this matter as a settlement to be analyzed under the *Martin* factors. Rather, I would review the Application in its reduced, negotiated state as presented by the Debtors.

As I begin my review of the Fee Application, I keep in mind that the only testimony provided to the Court on the Section 330 standards was by Mr. Gilmour and that no one testified on behalf of the applicant. Mr. Gilmour recognized that Hogan & Hartson provided value to the estate by their services, but he was not able to quantify the value of those services. He further testified that he felt a reduction was in order because many of the time entries concerned the circumstances surrounding the resignation of Hogan & Hartson as Special FCC Counsel and the ramifications of that resignation. He indicated that he could not determine the reasonableness of many of the time entries because they involved the "lumping" of several services under one time entry. Also, many entries did not identify the subject matter of correspondence or phone calls. These last two items are both specific requirements of fee applications of professionals filed in the United States Bankruptcy Court for the Middle District of Pennsylvania and are found, among other requirements, at Local Bankruptcy Rule 2016-1(b).

Admittedly, this matter came before the Court on a Motion to approve a Stipulation and not on a hearing to review the underlying Fee Application under Section 330 of the Bankruptcy Code. As with any Fee Application, there is the possibility that the Court may disallow certain items of compensation and *Busy Beaver* instructs that the

applicant has a right to a hearing should disallowance be a consideration. This possibility, coupled with the fact that the Fee Application, as originally filed or as renegotiated, was not noticed to creditors under either Fed.R.Bank.P. 2002(a)(6) or L.B.R. 2002-1(a), (b), compels a determination that a ruling as to the reasonableness of the instant application is premature. The applicant and/or Debtor is directed to notice its Final Fee Application, as modified, on or within twenty (20) days of the date of the Order to follow. At the end of this notice period, the Application will be taken under advisement by the Court.

    An Order will follow.

By the Court,

John J. Thomas, Bankruptcy Judge
(CMS)

Date: October 14, 2010

[K:\Cathy\Opinion-Orders filed 2010\5-02-bk-03994_Wireless_Hogan_Hartson_Fees.pdf]

5

Case 5:02-bk-03994-JJT    Doc 1415    Filed 10/14/10    Entered 10/14/10 11:49:50    Desc
Main Document    Page 5 of 5